I understand that counsel you've agreed to split your time so the time shown on the clock is your total time. Thank you, Your Honor. Good morning. James Decker on behalf of the appellant. May it please the court. I will not belabor every point made in our extensive brief but instead focus on just a few of the issues. First on the element of severe emotional distress. The record contains ample evidence that Ms. Sweaty's complaint, she repeatedly attested to suffering severe emotional distress and pain and suffering and humiliation as a result of Appellee's conduct. Those verified allegations are evidence at summary judgment. On top of that, the record shows Ms. Sweaty's overwhelming and unrelenting efforts to ensure the safety of her daughter, including the relinquishment of custody as a last-ditch effort to bring her home. The drastic steps undertaken by Ms. Sweaty, combined with her unambiguous attestations, are enough for a reasonable jury to infer profound mental anguish and severe emotional distress. Indeed, a mother in these circumstances would inherently suffer distress well beyond ordinary upset. Hence Ms. Sweaty's use of garden variety and discovery. Let me ask you this. I take at face value what you're saying, but what's your best analogous case for finding what your client suffered to be sufficient for an IAED claim under Arizona law? That would be the Pankratz case, Your Honor. And that's when there was a permanent separation from the child. That's different than this, is it not? This was an attempt to, at parental alienation and severance of the parent-child relationship. I'm not aware of anything in Arizona law requiring the actual permanent deprivation of the parent-child relationship. I think an attempt, the facts show there was a clear attempt here at that severance, and under Arizona law, we believe that's enough, at least for this to be taken to the jury. And I respect that, but you agree that Pankratz is different in that sense, that there was a permanent separation from the parent-child. Do you agree with that? I would agree with that, Your Honor. Counselor, just so I understand your position, so you're relying on the allegations, the verified allegations of the complaint to raise a material issue of fact on this, on the intentional affliction of emotional distress claim, correct? In part, yes, Your Honor. And what else is there? There are declarations submitted as well. Okay, which declarations are you relying upon to support a material issue of fact on this claim? As to this element, Your Honor, we are relying on the complaint, correct. Okay. The law does not require a psychiatric diagnosis or a heart attack or a permanent physical breakdown. The question is whether a reasonable juror could find that the distress is of such a serious nature that a reasonable person would not be expected to endure it. But doesn't it also require extreme and outrageous conduct? What was the extreme and outrageous conduct here? It was the attempt at parental alienation. Yes, Your Honor. And on top of that, Your Honor, the parent workshops and challenges were not the benign events described in the materials. The record shows ritualized shaming, being singled out and blamed for a divorce, and coercive group exercises dressed up as treatment. A jury could reasonably see that as an abuse of clinical and institutional power, not mere rudeness. If we were to affirm across the board, what would be left of this case? The fraud claim, Your Honor. That's what was ultimately tried. And that would go to a new jury trial? Yes, Your Honor. If I could reserve my time. All right. Counsel, I assume you disclosed that you were once my clerk. I have not. He was my clerk 10, 15 years ago. You should know that. We won't hold that against you. You're making me much younger than I am, Judge. It was close to 30 years ago. Good morning, Counsel. Good morning, Your Honors. Tim Eckstein on behalf of the defendant at police. Following up on Judge Hawkins' question, were this court to affirm across the board, the matter would go back for trial against Spring Ridge Academy and one of the individual defendants on the fraud claims for a retrial of the matter that was tried before. We're here today on appeal of the Rule 54B judgment claims against Spring Ridge and the other defendants on the non-fraud claims, all of which we submit never should have been brought in the first place and suffer from multiple legal defects. It sounds like the only questions the court has entertained so far are ones related to the intentional infliction of emotional distress. So I'll respond to those arguments. And if the court has additional questions, I'd be happy to answer those. As to the intentional infliction of emotional distress, severe emotional distress is required under Arizona law. There is no exception for the implied or assumed state of severe emotional distress based on the separation of a parent and child, whether that be temporary, whether that be permanent. Severe emotional distress is required and there has to be proof of that in some form. And following up on Judge Rolison's question, the only proof they have here are the allegations in the complaint. And the Lou V. Kona Hospital case, which they cite in the reply brief at 11, indicates that that's not sufficient. Like in that case, the allegations here are primarily statements of legal conclusions rather than facts relevant to the summary judgment motion. That's patently insufficient. As to the Pankratz case, there are two problems with that. The first problem, as Judge Smith identified, is the sort of the very distinct factual differences between that case and this case, a permanent deprivation versus a temporary deprivation, which is what the The more significant problem is that case doesn't deal with severe emotional distress at all. What that case engages with is the question of whether there is proof there of extreme and outrageous conduct, a separate element of an intentional infliction claim. And then following up on Judge Rolison's questions regarding evidence for intentional infliction in the form of extreme and outrageous conduct, Arizona law is clear that conduct has to be so outrageous in character, so extreme in degree, as to go beyond all possible bounds of decency and be utterly intolerable in a civilized society. It is not, as counsel suggested, simply some insults that somebody suffered, a strong disagreement with the therapy and education that was provided to the plaintiff's daughter. It is something that truly shocks the conscience, and the facts here don't support that. As explained in our briefs, really what occurred here is a disagreement between two parents about the schooling for their 17-year-old daughter, where she was here in school in Arizona for roughly six months, after which she returned to live with her father in California. Shortly after that, she turned 18. And again, plaintiff has some disagreements, very strong disagreements, with what took place in the school. But nothing that is alleged in the complaint, nothing for which there is proof provided in the motion for summary judgment, rise to the level of extreme and outrageous conduct as required under Arizona law. Is there a distinction in terms of the fraud claims between pre-enrollment fraud and post-enrollment fraud? Well, so the district court found that the distinction is one of pecuniary loss, that there is no pecuniary loss for anything that occurred post-enrollment. That's because the ex-husband paid the tuition? Well, he paid, yes. The evidence shows that he is the one who paid the tuition. Put aside for the moment whether there is pecuniary loss to plaintiff for anything that occurred pre-enrollment, but he drew that sharp line that we think is a fair line, at least for purposes of today, that there is no evidence of any pecuniary loss to plaintiff post-enrollment. So, Counselor, this is a little unusual, but they have asked to have separate arguments. So, if you don't have anything else now, we'll have rebuttal on this issue and then Ms. Wadey will be able to present our case and you'll be able to respond to that. Okay. Thank you, Counselor. I think it's four minutes. Thank you, Your Honor. Briefly on IID. Viewing the record in Ms. Wadey's favor, which is required here on appeal, a reasonable jury could conclude that a mother who discovers a program is abusive, rescinds the contract, retrieves her daughter, and then sees the defendants collude with her ex-husband to force the child back to that facility, cut off her private contact for weeks, and publicly weaponized confidential therapeutic information in family court, suffered distress well beyond ordinary upset. Arizona law does not require magic words or a psychiatric diagnosis. It requires evidence from which severe distress can be reasonably inferred. Counsel, I respect your point. I've got a lot of children. My colleagues do as well. Any parent would be concerned. But as I understand Arizona law, you've got to show it. Something just beyond the pale. Outrageous. There are so many situations where parents enroll their children in academies or whatever, hoping to better their situation. It seems to me that if we just rely upon these conclusions, no academy would survive, basically. Because every parent in a divorce situation, in this situation, would want something different. And who's to decide? It seems more distressing, but it's more ordinary. What am I missing? Your Honor, we think the record shows a pattern here. Exploiting a position of power in a locked-door residential setting. Isolating a child from her custodial parent after the parent rescinded consent. Invoking a family court order to justify cutting off private communications and visits. And subjecting the parent to ritualized shaming in group workshops under the guise of therapy. In the context of a behavioral health facility entrusted with a minor, this is precisely the kind of abuse that the courts can recognize. Crosses the line into an extreme. And again, your best Arizona case to that effect is what? We have nothing further added other than what we put in the briefs,  Okay. So basically you're asking as to if you will expand the reach of Arizona law in a situation like this. Or interpret it. I wouldn't use the word expand. I would say the law is flexible here. And a jury could reasonably find that this pattern or this conduct exceeds all bounds of decency. And that's what we're dealing with here. Could a jury find that this exceeds all bounds of decency? And we believe this matter should be submitted to the jury. But doing so again, coming back. Doing so would, if you will. We're not dealing with current Arizona law. You're asking us to expand the scope of what would be covered by Arizona law. Is that correct? We believe that a jury could find based on Arizona law that this conduct exceeds all bounds of decency. If reasonable minds could differ as to whether the conduct is extremely outrageous, the matter goes to the jury. Even though the law doesn't get you there right now? We believe that the law does get us there. And your best case again is what? Apologies, your honor. If reasonable minds can differ as to whether the conduct exceeds all bounds of decency, the matter is to go to the jury. Understood. Thank you, your honor. Thank you, counsel. Ms. Sweedy. Good morning. May it please the court. I am Kimberly Sweedy. I am the plaintiff, a mother, and the face of this lawsuit. We talked briefly about permanent deprivation. And while it's true that I was deprived of my daughter because I had to give up full custody and even the right to see her and engage in family law court-ordered reconnection therapy, while I was doing that, defendants would not let go. They continued to illegally, in violation of California and Arizona's statute, provide teletherapy across state lines unlicensed to my daughter in an attempt to sabotage and undermine the reconnection therapy ordered by the California courts. Counsel, wouldn't your remedy have been to go back to the family courts to say that they were in contempt of court or otherwise were violating the order? The order in family law court, I don't want to underplay the emotionality and the seriousness and the trauma that my daughter had suffered and was dysfunctional, and it was a decision we made because it was so close to her 18th birthday not to continue this litigation because it was not helping my reconnection with my daughter. And there is a question about what authority California has over an Arizona school because they had complied with none of the orders before. They continued to do that. They continued to violate the law. They continued, after my daughter's 18th birthday, to continue to brainwash her and engage in parental alienation. And while my daughter was not physically in their grasp, to this day, she is mentally and emotionally in their grasp. They affected such an effective campaign of parental alienation that my relationship with my daughter is nonexistent today because of them. But I will never give up trying to get that relationship restored or finding someone and researching therapists to help us do that. Counsel, perhaps I misunderstand, but it sounds to me like your primary complaint is against the Arizona, I mean the California family law court. Is that wrong? No, Your Honor. I think that they were lied to by the defendants. They misrepresented their program to the defendants in the exact same, the program to the family law court in the exact same manner that they misrepresented it to parents for 25 years. They claimed to be things that they weren't. And the court, many of them have never heard of the troubled teen industry that this is a part of, took them at face value and reduced it to the, oh, father and mother are in disagreement. And I continued to produce evidence to them and they continued to deny this. They couldn't deny it. Forgive me, guys, taking all of that at face value. It seems to me your complaint is against the California family law court. We're in an Arizona setting here. Even taking at face value all you said, it seems like your complaint is that the family law court bought this line, if you will, from the academy, and as a result, you have all these problems. But it's the family law court, not an Arizona, if you will, series of torts and so on. Isn't that correct? I don't agree with that, Your Honor. I've never, my parents were public school teachers for over 30 years each. I've never heard in my life of a school becoming involved in the closed family law matter of one of their students, much less when they were hired, though they're not, as a therapeutic facility and releasing confidential, very sensitive information to be weaponized against me in a family law court. Sotomayor, if you can, I can stop you for just a minute. The question is, number one, what court had jurisdiction at the moment you're talking about to control the behavior, alleged or otherwise, of the academy? Was it the California family court? Yes or no? Do they have authority? Yes or no? No. The California court cannot control the behavior of the academy. It has no jurisdiction over, and this was one of the arguments I made in family law, it has no jurisdiction over any school necessarily, even in California. They issue orders to public schools in California, and they would have to bring them in as a party. They can't just issue orders if they're not a party, much less in Arizona. Why is it that the court, that the placement was in accordance with an agreement made in the family court in California? That is not correct, Your Honor. What was it about the family court proceedings that resulted in your daughter continuing her placement at the academy? My ex-husband and my divorce was completed. It was done. The only thing that was continuing was that we had a minor child. When we were ---- Someone authorized this child to be at the academy. Who authorized it? Not originally. So you're saying no one authorized the child to be there? Not the courts originally, no. Did your husband, ex-husband, authorize her to be there? Originally, it was my ex-husband and I, in agreement, enrolled her based on representations. The family law court was not originally involved in that. Once I, as the primary legal and physical custodian, within seven weeks realized that what they had promised was very different from what they were delivering, I went with sheriffs, picked up my daughter and rescinded the contract, returned to California and notified her father immediately and resumed the visitation schedule. At that point, Spring Ridge Academy was ---- and the defendants were not willing to give up the $9,000 a month and colluded and conspired with my ex-husband who ran into family law court in a close matter, ex parte, to order her back, even though Spring Ridge Academy, as an institution, is not legal in the State of California. So the court did order her back? On an ex parte, while Spring Ridge Academy was colluding with my ex-husband. But the fact remains that the California court ordered her back. But you said they had no authority to do that. No, they didn't do it originally. Excuse me, Your Honor, I'm sorry. Originally, they did not order her there. They ordered her back after she was removed. That is correct. But they did order her. It was an order of the family law court. They didn't order the way it was interpreted. They didn't order that I would have no access to therapeutic records, no access to academic records, no access to my daughter. But the problem is ---- I'm sorry. No, please, I just say that you're talking about the minutia of the order of the family law court. Right? It's an ex parte order. It's only a few lines. But if there's a problem with that order, you're saying that the Academy did not comply with the intent of the order, then your remedy was to go back to the court and explain to the court why the Academy was not compliant with their order. Which I did, as explained in the complaint, which I did. I went back. I explained what they were doing. And the court issued another order and said no. In summary, and this is all in the complaint, mother and father have the same rights. And they still did not comply. So they were not complying all along. And then COVID hit. And the courts were closed. And I was banging on the courthouse door to an empty courthouse saying I have an emergency order. The courts were closed. And I was frantic. And I needed my daughter. And I was having no contact with her. And therefore, I thought I need to get her home. She has a virus. She has symptoms. There's a school shortly over there that had a COVID outbreak. Congregate care is dangerous. All of this emotionality, excuse me, was going on at the time I needed to go fighting in court and trying to prove a case that we proved a part of in three weeks of trial in ex parte in Zoom hearings. This stuff is incredible. It's hard for a court to believe that this is going on. But it's time to believe these victims, including me and my daughter, of what was going on.  All right, counsel. Any more questions? One more thing about the loss. You're over your time. Oh, I'm sorry. All right. Thank you, counsel. Unless the court has questions, I have nothing further. All right. Thank you, counsel. Thank you to all counsel for your arguments. The case is submitted for decision by the court.
judges: HAWKINS, RAWLINSON, SMITH